## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

JANE EMERICK,                    )
                                 )
  Plaintiff,           )
                                 )
 v.                         )  Case No. 16-cv-0788-MJR-RJD
                                 )
WOOD RIVER—HARTFORD              )
SCHOOL DISTRICT NO. 15,          )
                                 )
  Defendant.            )

## ORDER

**REAGAN, Chief District Judge:**

### I. Introduction

This matter is before the Court on Defendant, Wood River—Hartford School District No. 15's ("Wood River"), Motion to Dismiss/Motion for Summary Judgment (Doc. 15).[1] The underlying dispute is based upon Plaintiff Jane Emerick's claim that Wood River (her employer) failed to provide reasonable accommodations and discriminated against her for her disabilities (Doc. 1). Emerick identifies numerous specific occasions of discrimination or a lack of accommodations in her Complaint spanning from 2013 to present. Defendant seeks dismissal or summary judgment on

---

[1] Plaintiff filed a second motion, styled only as a Motion for Summary Judgment, on June 23, 2017 (Doc. 29). The Second Motion for Summary Judgment is identical in all substantive respects to the first one, with the exception that it includes a more elaborate contention that the Defendant has no obligation to provide accommodations for an employee who is already able to perform the essential functions of his or her job without accommodations. This argument will be briefly addressed in the pending motions section of this Memorandum and Order.

multiple theories (Doc. 15).  Emerick responded (Doc. 19) to the Motion and Defendant replied (Doc. 23), so the matter is now ripe for consideration.  This Court enjoys jurisdiction pursuant to 28 U.S.C. § 1331 because Emerick's claims invoke federal question jurisdiction.

## II.    Facts

To understand the arguments being made before the Court on the Defendant's Motion for dismissal or summary judgment (Doc. 15) it is important to understand the steps Emerick took prior to initiating a law suit, as well as the timing of the events discussed in her Complaint.  The facts below are organized into two chronologies, one to reflect steps Emerick took with the EEOC pre-Complaint and a second to reflect events identified in her Complaint.  These two distinct chronologies are important to this Court's findings regarding *res judicata* and time-bar arguments because procedural and time-bar constraints limit the potential scope of arguments properly before this Court.  Ultimately, the Court will grant the Defendant's motion to time-bar or dismiss for insufficiently pleading a sub-set of claims, while allowing others to proceed.

Emerick, a long-time Wood River employee, filed her first charge with the EEOC on August 15, 2013 (Doc. 15-1 at 6-13).  In the charge, she complained that Defendant was failing to make accommodations for her diagnosed condition—multiple sclerosis ("MS")—which limits her ability to walk, stand, open doors, ascend and descend stairs, and lift items (*Id.*).  The first EEOC charge was amended once on February 3, 2014 (*Id.*).

The charge complains of a continuing course of conduct from April 30, 2013, through July 19, 2013 (*Id.*). During that timeframe, Emerick alleges that she was repeatedly denied instructional assistant duties because those duties took place in non-accessible portions of the school (*Id.*). Instead, she was relegated to less challenging duties, like monitoring in-school suspension (*Id.*). The amendment identifies specific portions of the building that were not accessible, but does not expand the date range of the alleged discrimination (*Id.*). For context, the charge states:

> I have requested, on many occasions, the assignment of instructional assistant duties but have repeatedly been limited to less challenging duties such as monitoring in school suspension sessions that involve very little student educational instruction. Non-certified teacher's assistants are being assigned student instruction assistant duties because [Wood River] chooses to conduct these classes on the second floor. The second floor is not handicap accessible. I have requested that I be allowed to perform instructional assistant duties in classrooms on the ground floor. However I have been told as recently as July 19, 2013 that my accommodation request would affect other teacher classroom assignments. All of my other requested accommodation solutions have been rejected for supposedly being too costly, too time consuming or no available funds.

(*Id.*). The amendment adds:

> The schools are not fully handicap accessible. I have been denied reasonable accommodations of safe access to all school floors including the Lewis & Clark Junior High School, (LCE) gymnasium and cafeteria. I have requested and been denied requests for reasonable accommodations of automatic outside and automatic inside doors at the school entrance. I have been denied the reasonable accommodation of a handicap accessibility for the 1st floor girl's bathroom. I have been denied the reasonable accommodation of a handicap parking space near the front of the Handicap entrance. District meetings are held in the LCE gymnasium which is not accessible to me due to my disability. These meetings could be held at the Hartford Elementary school which is accessible to me. The

door to the Lewis & Clark Junior High school Admin. Office, where teacher mailboxes are located, is not accessible to me due to my disability and this door should open automatically. The lift does not go to the second floor and it is not up to code.

(*Id.* at 8-9). The EEOC ultimately "[was] unable to conclude that the information obtained establishes violations of the statutes," though it did not certify that no violations existed (*Id.* at 11). On September 9, 2015, Emerick received a right-to-sue letter in relation to her first EEOC charge, but she did not initiate suit (*Id.*).

Rather than initiate suit, on November 3, 2015, Emerick filed a second charge with the EEOC (Doc. 15-1 at 17-18). The second charge alleged a continuing course of discrimination from August 3, 2009, through September 2, 2015 (*Id.*). Specifically, she complained that Defendant failed to make multiple areas of her workplace handicap accessible to her—listing events and areas of the school that she was not able to access (*Id.*). Emerick also alleged that administrators have isolated her and failed to make accommodations, creating a hostile work environment (*Id.*). The second charge states:

In August of 2014, I was transferred to Hartford Elementary School. [...] [Wood River] has failed to make my work location handicap accessible, continues to deny my requests for reasonable accommodations, and has created a hostile work environment based on my disability. I cannot enter or exit the school building without having my mother open the door for me. Contrary to what [Wood River] has repeatedly stated, there is no one at the school who opens and closes the door for me. There is a bathroom in my classroom, but I've been told that I cannot use the bathroom because it lacks the required handicap accessible "grab bars." [Wood River] has denied my request that "Grab bars" be installed in the bathroom in my classroom. I have to walk down a long hallway, utilizing my walker, in order to use a bathroom that is handicap accessible. I cannot access the multi-purpose room that is located on the lower level of

the school. I am being excluded from important education meetings that are conducted in the multi-purpose room every Monday. Student concerts and school activities are held in the multi-purpose room which I cannot gain access to because [Wood River] refuses to install a stair tracker or other device to safely allow me access to the lower level of the school. I am forced to sit alone in my classroom during these Monday meetings and while other school activities are held in the multi-purpose room. I am not able to attend mandatory meetings at Lewis and Clark Elementary and Junior High School because the meetings are held in areas that are not handicap accessible. A critical part of my job is to conduct student testing at Lewis and Clark Elementary and Junior High School and Hartford Elementary School. However, I have been excluded from testing students, and therefore, prevented from participating in important decisions being made based upon the results of these tests for my students. My requests for reasonable accommodations that would allow me to fully access all areas of Hartford Elementary and Lewis and Clark Elementary and Junior High Schools continue to be denied.

(*Id.* at 17-18). On April 15, 2016, the Department of Justice Civil Rights Division issued a right-to-sue letter pertaining to the 2015 charge of discrimination because more than 180 days had lapsed since Emerick filed the charge without the EEOC taking action (Doc. 15-1 at 23).

On July 13, 2016, Emerick filed her Complaint with this Court under the ADA (Doc. 1). In the Complaint, Emerick specifically references her second charge with the EEOC. She also provides a chronological recitation of incidents with her employer that she alleges caused her harm. The chronology begins with an allegation that in July 2013 she was required to take a fitness-for-duty exam, though other employees were not required to do so (*Id.* at 2, ¶7). During the entire 2013-14 academic year, she alleges that she lacked access to a handicapped bathroom, that she was excluded from staff

meetings and student events, and that her employer failed to make reasonable accommodations to improve the accessibility of school facilities (*Id.* at 3, ¶8).

Further, in August 2014, she learned that Defendant owned a stair tracker but lent it to another school facility rather than installing it at her worksite (*Id.*, ¶9). On August 20, 2014, she alleges that the principal told her she could not use the bathroom in her classroom because there were not grab bars (*Id.*, ¶10). From August 26, 2014, through September 2, 2014, training was held at a non-accessible facility (*Id.*, ¶11). On November 24 and December 15, 16, and 18, 2014, student events were held in a non-accessible part of the building (*Id.*, ¶12-14). Non-accessible events occurred again on January 30, February 15, May 6 and 26, 2015 (*Id.*, ¶15-17). On August 17 and 18, 2015, beginning-of-the-year meetings were not accessible (*Id.* at 18). And, finally, on September 14 and 15, 2015, student testing was held in a non-accessible area (*Id.*, ¶19).

Emerick alleges that after she filed her second EEOC charge on November 3, 2015, the principal moved weekly meetings to the accessible cafeteria, effective November 23, 2015 (*Id.*, ¶22). However, during the week of January 11, 2016, student testing activities were again held in a non-accessible area (*Id.*, ¶23). As a whole, Emerick alleges that Defendant was always aware of her disability and refused to engage in a process to develop reasonable accommodations (*Id.* at 6). Emerick contends that she is a qualified individual capable of performing all functions of her job (*Id.*). She is still employed by the Defendant (*Id.*).

Emerick seeks injunctive relief against future discriminatory acts, and she also seeks a mandate for her employer to implement accommodations such as a chair lift, grab bars, and automatic doors. (*Id.* at 6-7). Emerick also seeks attorney's fees and punitive damages (*Id.*).

In response to Emerick's Complaint, Defendant filed a joint Motion to Dismiss/Motion for Summary Judgment (Doc. 15). The four major arguments are: (1) Emerick's Complaint should be dismissed under the doctrine of *res judicata* because she failed to act on her first EEOC charge and only initiated suit after the second charge; (2) allegations repeated in Emerick's second EEOC charge and presented in the Complaint should be time-barred because Emerick failed to initiate suit within 90 days of receiving her first right-to-sue letter; (3) allegations in Emerick's second EEOC charge and presented in the Complaint that occurred more than 300 days before her initiation of that charge with the EEOC should be time-barred; and, (4) Emerick's Complaint should be dismissed for failure to state a claim because her allegations are not adequate (*Id.*).

Emerick responded that *res judicata* does not apply to prior EEOC determinations, so her suit should not be barred on that ground (Doc. 19 at 2-3). As to the time-bar arguments, Emerick argues that because she filed within 90 days of the second right-to-sue letter, her Complaint is timely, and, because she alleges a hostile work environment, her Complaint rightfully encompasses conduct from more than 300 days before her second EEOC charge (*Id.* at 4-5). Finally, she alleges that Defendant

conflates or misrepresents the elements of a failure to accommodate claim and a disparate treatment claim, though, in any event, she has alleged a valid claim under both theories (*Id.* at 5-8). Additionally, Emerick elaborates on her theory of a hostile work environment (*Id.* at 8-9). She concedes that her request for punitive damages is inappropriate (*Id.* at 9-10).

Defendant replied that Emerick did not present a hostile work environment claim in her Complaint, but that, even if she did, she failed to identify sufficient facts and arguments to warrant such a claim (Doc. 23 at 2-3). Defendant specifically highlights Emerick's characterization in her response brief of certain acts as "discrete discriminatory acts," arguing that those acts are not adverse employment actions (*Id.*). Thus, Defendant concludes that Emerick cannot pursue a hostile work environment claim (*Id.* at 4).

### III.    Standard of Review

This Court accepts all factual allegations as true when reviewing a 12(b)(6) motion to dismiss. ***Erickson v. Pardus*, 551 U.S. 89, 94 (2007).** To avoid dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim sufficient to show entitlement to relief and to notify the defendant of the allegations made against him. **FED. R. CIV. P. 8(a)(2);** ***Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007).** To meet this standard, a complaint must describe the claims in sufficient factual detail to suggest a right to relief beyond a speculative level. ***Id.;***

*Ashcroft v. Iqbal*, **556 U.S. 662, 678 (2009); *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007).** A complaint need not contain detailed factual allegations, ***Scott v. Chuhak & Tescon, P.C.,* 725 F.3d 772, 782 (7th Cir. 2013)**, but it must go beyond "mere labels and conclusions" and contain "enough to raise the right to relief above the speculative level." ***G&S Holdings, LLC v. Cont'l Cas. Co.,* 697 F.3d 534, 537-38 (7th Cir. 2012).**

The Seventh Circuit has outlined the boundaries of 12(b)(6) with two major principles. First, although facts in the pleadings must be accepted as true and construed in the plaintiff's favor, allegations in the form of legal conclusions are insufficient to survive a motion to dismiss. ***McReynolds v. Merrill Lynch & Co., Inc.,* 694 F.3d 873, 885 (7th Cir. 2012).** And, second, "the plausibility standard calls for a 'context-specific' inquiry that requires the court 'to draw on its judicial experience and common sense.'" ***Id.*** Threadbare recitals of elements and conclusory statements are not sufficient to state a claim. ***Id.*** Put another way, to survive a motion to dismiss "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together [. . .] the court will ask itself *could* these things have happened, not *did* they happen." ***Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir. 2010).**

Federal Rule of Civil Procedure 12(d) provides that if, on a motion under Rule 12(b)(6), matters outside the complaint are presented, the motion must be treated as one for summary judgment under Rule 56. **FED. R. CIV. P. 12(d).** Summary judgment is

appropriate where the admissible evidence shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. ***Taylor-Novotny v. Health All. Med. Plans, Inc.,* 772 F.3d 478, 488 (7th Cir. 2014).** A "material fact" is a fact that affects the outcome of the lawsuit under the applicable substantive law. ***Id.* at 488*, see also Hanover Ins. Co. v. N. Bldg. Co.,* 751 F.3d 788, 791 (7th Cir.), *cert. denied,* 135 S.Ct. 280 (2014).** Summary judgment should be denied if, based upon the evidence, a reasonable jury could return a verdict for the non-moving party. ***Miller v. Gonzalez,* 761 F.3d 822, 827 (7th Cir. 2014) ("Recall that our job when assessing a summary judgment motion is not to weigh evidence, make credibility determinations, resolve factual disputes and swearing contests, or decide which inferences to draw from the facts.").** By contrast, if the factual record could not lead a reasonable jury to find for the non-moving party, then summary judgment is appropriate. ***Bunn v. Khoury Enter., Inc.,* 753 F.3d 676, 682 (7th Cir. 2014).** This Court assesses the record in the light most favorable to the non-movant, giving the non-movant the benefit of reasonable, favorable inferences. ***Spaine v. Cmty. Contracts, Inc.,* 756 F.3d 542, 544 (7th Cir. 2014).**

As a preliminary matter, Emerick argues in her response (Doc. 19) to the motion to dismiss (Doc. 15) that the motion is premature and lacks factual and legal support. Emerick cites ***Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986),** for the proposition that a party must be afforded the opportunity to conduct discovery prior to responding to a

motion for summary judgment. However, this is an overly broad application of that principle to the facts before the Court. Here, Emerick had ample time to respond to the motion to dismiss, and she did not seek additional time on the basis that she needed an opportunity to conduct discovery to adequately respond. There are four issues presented in the motion (Doc. 15), three of which more or less seek summary judgment (one argument on *res judicata* and two on time-bar issues). The record does not suggest that additional discovery on these matters would have assisted Emerick in disputing them. In any event, this Court is largely declining summary judgment on those arguments, so Emerick is not harmed by a lack of early discovery. As to the fourth issue, the Defendant argues that Emerick has generally failed to state a claim, so the Court will apply the typical motion to dismiss standard to this argument.

### IV.     Legal analysis

#### A. *Res judicata*

Both parties agree that *res judicata* applies if there is: (1) an identity of the parties in the actions; (2) a final judgment on the merits in the first action; and, (3) an identity of the causes of action. ***See e.g. Barr v. Bd. of Tr. of Western Illinois Univ.*, 796 F.3d 837, 840 (7th Cir. 2015).** What the parties do not agree about is whether *res judicata* precludes an individual from bringing a suit based on issues presented to the EEOC multiple times.  Defendant argues that if a plaintiff files an EEOC charge, gets a right-to-sue letter, does not sue, and then files a second EEOC charge containing the same or similar

claims as the first, then *res judicata* should bar suit on the second charge. By contrast, Emerick contends that her two EEOC charges are not premised on identical facts, so *res judicata* should not apply. This disagreement implicates the second and third prongs of the *res judicata* analysis. Neither party presented binding precedent squarely resolving this issue.

In the employment law context, the Seventh Circuit held that a Rule 41(b) dismissal for failure to prosecute a claim counted as an adjudication on the merits for *res judicata* purposes. ***See Barr*, 796 F.3d at 840.** The *Barr* Court was careful to note that "claim splitting in the employment-discrimination context" is "squarely foreclosed by a long line of [] decisions." *Id.* Barr's first complaint named one defendant, and the second complaint (coming after the first was dismissed) named another, but the Court found the complaints to be identical in all other substantive respects. *Id.* Critical to the Court's holding was the fact that both of Barr's complaint stemmed from a single incident—the employer's decision not to retain Barr as a faculty member. Accordingly, the *Barr* Court held that given the Rule 41 dismissal of the first complaint, plaintiff could not bring the second suit. *Id.* **at 841.**

In ***Hermann v. Cencom Cable Assoc., Inc.*, 999 F.2d 223, 226 (7th Cir. 1993)**, the Seventh Circuit held that the overlap of one fact, or even a few facts, would not automatically lead to *res judicata* if the bulk of the factual contentions supporting each distinct case were separate. In *Hermann,* a plaintiff filed one suit for race and gender

discrimination and another for discontinuation of her COBRA benefits. The Court held that though both complaints had a genesis in plaintiff's termination, the facts establishing each were largely distinct and *res judicata* thus did not apply. **Id. at 225-27.** However, the *Hermann* Court left open "the difficult intermediate cases—where there is substantial factual overlap between the two claims, but not as here or in the retaliation cases, a complete or nearly complete lack of overlap[.]" **Id. at 227.**

In ***Adams v. City of Indianapolis*, 742 F.3d 720, 736 (7th Cir. 2014),** the Seventh Circuit found that a second suit based on promotion decisions made during the 2010 and 2011 hiring cycles was barred by *res judicata* based upon a final judgment reached in a case about promotions in the 2008 cycle. The *Adams* Court noted that even if *res judicata* did not apply, surely issue preclusion did. **Id.** Issue preclusion requires that: (1) the issue sought to be precluded is the same as an issue in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; (3) the determination of the issue must have been essential to the final judgment; and, (4) the party against whom estoppel is invoked must have been fully represented in the prior action. **Id., citing *Matrix IV, Inc. v. American Nat. Bank and Trust Co. of Chicago*, 649 F.3d 539, 547 (7th Cir. 2011).**

The problem with the majority of the precedent regarding *res judicata* in the employment context is that it addresses cases where the merits were reached in a federal court prior to a second suit either being initiated or reaching completion. Unlike

such a scenario, here, there has never been a final judgment on the merits for *res judicata*, or any consideration of the issues in prior litigation for issue preclusion, because the case never went beyond the administrative review of the EEOC. This scenario falls into the area of "difficult intermediate cases" side-stepped by the *Hermann* Court. **999 F.2d at 227.** The rationale of the *Barr* Court disfavoring claim-splitters weighs against allowing duplicative claims to proceed, but this Court finds it too heavy-handed to grant summary judgment in this case on *res judicata* or issue preclusion grounds where there has been no actual judicial resolution of the issues. ***See Buckhalter v. Pepsi-Cola General Bottlers, Inc., 820 F.2d 892 (7th Cir. 1987) (finding that Illinois Human Rights Commission's administrative proceedings could preclude a § 1983 claim, but that the Commission's determination could not preclude a Title VII claim from being reviewed in federal court).***

The tenor of the precedent discussed above is sufficient to support a finding that *res judicata* or issue preclusion should not be applied to the claims in this case because, up until this point, there has never been a formal *judicial* review of the facts and arguments presented. The Defendant logically argues that receiving a right-to-sue letter, failing to sue, and then securing a second right-to-sue letter would allow an unfair end-run around the right-to-sue process; but *res judicata* or claim preclusion are the wrong doctrines to bar such an attempt because those doctrines are meant solely to

bar reconsideration of issues a court has considered.  Accordingly, the Court denies the

Defendant's motion to dismiss or for summary judgment on the theory of *res judicata.*


### B.  Time-bar

Defendant next attempts to defeat Emerick's Complaint, or to narrow the scope

of the issues she can bring before the Court, via two procedural requirements involving

the EEOC—the 300-day requirement for lodging a claim with the EEOC and the 90-day

requirement for initiating a suit after EEOC action is declined. In most circumstances, a

party initiating a complaint before the EEOC may only include incidents that occurred

within 300 days before lodging the charge with the EEOC.  ***See Stewart v. County of***

***Brown*, 86 F.3d 107, 110 (7th Cir. 1996),** *citing* **42 U.S.C. § 12117(a);** *Nat'l Railroad*

***Passenger Corp. v. Abner Morgan, Jr.,* 122 S.Ct. 2061, 2070-76 (2002).**  The 300-day

requirement is absolute for discrete incidents of discrimination, but not for a continuing

course of conduct.[2]  By contrast, events outside the scope of the 300-day window may

be raised either as contextual evidence for discrete claims or as evidence of a hostile

work environment.

The Supreme Court discussed the distinction between discrete incidents of

discrimination and a continuing course of conduct in ***Nat'l Railroad Passenger Corp.,***

**536 U.S. at 2070-2076.** There, the Court held that discrete incidents of discrimination,

---

[2] The ADA internally references § 2000e-5 of the EEOC enforcement provisions for specific procedural
requirements to preserve a claim of discrimination.  **42 U.S.C. § 12117(a), referencing 42 U.S.C. § 2005e-5.**

even if related to other later incidents, could not overcome the 300-day bar. By contrast, if a plaintiff alleges that a continuing course of conduct created a hostile environment, then so long as any portion of the hostility occurred within 300 days, the charge with the EEOC will be timely. The Court defined a discrete act as an "act [that] 'occurred' on the day that it 'happened,'" such as termination, failure to promote, denial of transfer, or refusal to hire. *Id.* **at 2070-73.** By contrast, a hostile environment "occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Id.* **at 2073.** For example, the Court said a mere epithet alone may not be discrimination, but in the context of a constant stream of harassment it may implicate Title VII. *See generally id.* **at 2073-74 (citations omitted).** Thus, if a plaintiff alleges a hostile environment, the claim may include events more than 300 days before the EEOC charge, but, if the allegation is a discrete act, the act or acts must have occurred within 300 days of the EEOC charge.

Once a charge has been filed with the EEOC, if the EEOC declines to act, a plaintiff must then secure a right-to-sue letter and must act on the letter within 90 days. *See* **42 U.S.C. § 12117(a) (adopting Title VII's claim and exhaustion procedure).**

Defendant argues the two procedural issues—the 300-day requirement and the 90-day requirement—in reverse order, arguing first that Emerick's Complaint should be barred under the 90-day requirement and, second, that it should at least be limited by the 300-day requirement. Emerick responds to these time-bar arguments by recasting

her claim as one of a continuing course of conduct by her employer resulting in a hostile work environment (Doc. 19). Defendant replied to the introduction of the hostile work environment claim by arguing that Emerick failed to identify facts or legal argument sufficient to state a claim (Doc. 23), but Defendant did not respond to a hostile environment in relation to the 90- or 300-day requirements. The Court will address this two-part time-bar argument in the order the Defendant raised it—starting with the 90-day right-to-sue deadline and working backwards to the 300-day requirement.

As to the 90-day time-period within which to initiate a suit, the issue presented in this case is whether securing an initial right-to-sue letter, failing to sue on it, and then securing a second right-to-sue letter encompassing some of the same conduct as the first results in a time-bar for the claims presented twice. The Seventh Circuit has not explicitly addressed this issue. Defendant cites a Second Circuit case for the proposition that if a first right-to-sue letter is secured, no suit is taken, and then a second right-to-sue letter is secured for identical conduct, the plaintiff should be time-barred from bringing the case to court. *See Soso Liang Lo v. Pan American World Airways, Inc.*, **787 F.2d 827, 828 (2d Cir. 1986).** Emerick cites no precedent to the contrary, though she tries to distinguish her case from *Soso* on the basis that both right-to-sue letters in *Soso* were secured based on identical underlying facts, whereas here she secured two right-to-sue letters based on slightly different sets of facts.

The Northern District of Illinois confronted the issue of two EEOC charges and two right-to-sue letters based on slightly varied conduct, concluding that conduct repeated from the first charge to the second charge was time-barred. *See Freeman v. Travelers Companies*, **63 F.Supp.3d 867 (N.D. Ill. 2014).** In its analysis, the *Freeman* Court noted that it would defeat the point of the EEOC's 90-day time-period to initiate a suit if plaintiffs could re-open that window by securing a duplicative right-to-sue letter. Carefully examining the facts before it, the *Freeman* Court ultimately time-barred two claims that were repeated in both EEOC charges, but allowed a third claim to proceed that was newly presented in the second EEOC charge. *Id. at 873-74.*

Applying the *Freeman* and *Soso* rationale to the present case, some of Emerick's claims would be time-barred, but others would survive. Emerick's first charge with the EEOC was lodged on August 15, 2013, and was amended on February 3, 2014. It alleged a continuing course of discriminatory conduct from April 30, 2013, to July 19, 2013 (*See* Doc. 15-1 at 6-9). The right-to-sue letter was issued on September 15, 2015.

Emerick's second charge with the EEOC was initiated on November 3, 2015. That charge complained of a continuing course of conduct from August 3, 2009, to September 2, 2015 (*See* Doc. 15-1 at 17-18). The right-to-sue letter was issued in April 15, 2016.

The eight-page complaint in this case, filed on July 13, 2016, details specific incidents of conduct from July 2013 through January 11, 2016, and also references the second EEOC charge (Doc. 1).

Under *Freeman* and *Soso*, any conduct complained of in the first EEOC charge—i.e., conduct between April 30, 2013, and July 19, 2013—would be time-barred from consideration. Applying that time-bar to the contents of the complaint, the only conduct potentially excluded would be paragraph 7, which complains of an incident in July 2013. A broader application of the time-bar would bar any conduct that occurred before Emerick received her first right-to-sue letter on September 1, 2015. Such a bar would exclude the conduct detailed in paragraphs 7-18 of the Complaint. A bar excluding conduct in paragraphs 7-18 could make sense under the rational that Emerick could have amended her first EEOC charge to include that conduct up until the time she received her first right-to-sue letter. However, the Court will not apply such a broad bar at this juncture because the parties did not address this nuanced issue in great detail. Nevertheless, this Court accepts Defendant's argument that conduct repeated from the first to the second EEOC charge should be time-barred under the 90-day requirement.

This Court will construe the 90-day bar to mean that discrete incidents of discrimination that allegedly took place between April 30, 2013, and July 29, 2013, are barred from proceeding under a theory of failure to accommodate or disparate treatment. However, the Court will not apply a 90-day bar to claims that are new to the second EEOC charge. From the Court's reading of the Complaint, and subsequent pleadings, the potentially "new" claims are those complaining of events after July 19,

2013, as well as Emerick's theory of a hostile work environment. Treating these "new" claims as timely under the 90-day rule (because suit was initiated within 90 days of the second right-to-sue letter) the Court must also consider whether the claims made in the second EEOC charge were timely-raised before the EEOC.

An EEOC charge must be filed within 300 days of the allegedly discriminatory act. Defendant argues that Emerick's second EEOC charge was not timely because it references conduct ranging from August 2009 onward, without explaining how such a charge would be timely (Doc. 15 at 6-7). Emerick argues that the contents of her second EEOC charge were timely because she identified a hostile environment claim not subject to the 300-day bar, or, in the alternative, at least some of the discrete incidents of discrimination identified in her Complaint occurred within 300 days of the second EEOC charge (specifically paragraphs 16-19). The Court will address the 300-day bar in relation to a theory of hostile work environment, as well as in relation to discrete instances of discrimination.

Based upon a review of Emerick's two EEOC charges, and the arguments made by the parties, the Court will assume for purposes of resolving the time-bar arguments that Emerick presented a new claim about a hostile work environment in her second EEOC charge. The Seventh Circuit has not explicitly delineated the boundaries of a hostile environment claim based on a lack of accommodation, but it seems to this Court

that such a theory could be viable.[3]  Per the Supreme Court's holding in *Nat'l Railroad*, the events Emerick identifies in her second EEOC charge could be considered timely because at least some of the events that allegedly created a hostile environment occurred within 300 days of her second charge to the EEOC. A hostile work environment claim is exempt from the 300-day requirement because the claim identifies numerous events that, taken alone, may not appear to be discriminatory, but amount to a toxic environment when taken together.  ***See Nat'l Railroad Passenger Corp.,* 122 S.Ct. at 2070-76.**  Under a theory of a hostile work environment, events spanning back to 2009 could be included in her present claim. Therefore, the Court will not carve out events from her initial EEOC charge (April-July 2013) because in that charge her contentions were not couched in terms of a hostile work environment claim, so it is not clear that the first EEOC charge and right-to-sue letter contemplated that theory of relief.

Alternatively, if the operative theory is a failure to accommodate or disparate treatment, which consist of discrete acts of discrimination, only acts that occurred within 300 days before Emerick's second EEOC charge are actionable. The first EEOC charge complained of acts from April 30, 2013, to July 19, 2013. So, clearly, anything from that charge would be time-barred by the 300-day rule.[4] The second charge

---

[3] The viability of this claim is discussed in more detail on pages 22-24.
[4] Any discrete events repeated from the first charge to the second charge are already barred by this Court's finding regarding the 90-day rule.

complained of conduct from August 3, 2009, through September 2, 2015. The charge was filed with the EEOC on November 3, 2015. Counting 300 days back from November 3, 2015, the earliest possible date of an event that could be included would be January 7, 2015. Paragraphs 15-19 of the Complaint identify events that occurred within the 300 days before the second EEOC charge. Those limited allegations would be actionable as discrete incidents under a failure to accommodate or disparate treatment theory.

In sum, the Court will allow a hostile work environment claim to proceed for August 3, 2009, to September 2, 2015. The Court declines to carve out the period identified in the first EEOC charge (April 3, 2013, to July 19, 2013) from the August 3, 2009, to September 2, 2015 window because it is not clear that the first EEOC charge contemplated a hostile environment claim. As to discrete acts of failure to accommodate or disparate treatment, the Court will only allow claims to proceed for events that took place after January 7, 2015.  The Court will now analyze whether Emerick has identified sufficient facts to state a claim under any of these theories.

## C.  Failure to state a claim

### a.  Hostile work environment

As the Court acknowledged above, the Seventh Circuit has not explicitly recognized a hostile work environment claim in the context of the ADA. However, many portions of the ADA cross-reference Title VII, which contains established

standards for a Title VII hostile work environment claim.[5] Assuming solely for ruling on this motion that a hostile work environment claim can be brought for violations of the ADA, this Court will use the Title VII analysis of such a claim to analyze Emerick's arguments. "An actionable hostile environment claim requires the plaintiff to prove: (1) that the work environment was both subjectively and objectively offensive; (2) that the harassment was based on membership in a protected class; (3) that the conduct was severe or pervasive; and, (4) that there is a basis for employer liability." *Alexander v. Casino Queen, Inc.*, **739 F.3d 972, 982 (7th Cir. 2014) (quoting** *Mendenhall v. Muller Streamline Co.*, **419 F.3d 686, 691 (7th Cir. 2005)).** Factors to consider include the frequency and severity of conduct, as well as if it is physically threatening or humiliating, or merely an offensive utterance, or whether it interferes with an employee's work performance. *Id.*

Emerick did not explicitly plead a hostile work environment in the Complaint, so the elements are not clearly delineated there. However, the elements are discussed in passing in her response to the motion to dismiss (Doc. 19). There, Emerick attempts to use the theory of a hostile environment to overcome time-bar issues, arguing that a hostile work environment claim complains of an employer's continuing violation. Emerick is correct that the 300-day time-bar applies differently to an assertion of a

---

[5] *See Silk v. City of Chicago*, **194 F.3d 788, 803-804 (7th Cir. 1999)** (indicating that the Seventh Circuit has not explicitly recognized an ADA claim based on a hostile environment, but that the Court would proceed on the assumption that a hostile work environment claim would be cognizable under the ADA and would be subject to the same standards as a Title VII claim).

hostile work environment. But, Emerick's advancement of this theory with scant factual support is insufficient to state a claim. Emerick references four paragraphs of her complaint as support for her theory of a hostile environment (paragraphs 16-19), but, standing alone, this does not satisfy all four elements of a hostile work environment claim identified above.

It appears from Defendant's reply to Emerick raising the theory of hostile work environment that Defendant is asking the Court to grant summary judgment on this theory. The Court finds that the hostile work environment claim is insufficiently developed by either side; and, thus, summary judgment at this juncture is inappropriate. However, the claim is so vaguely presented that the Court will grant the request to dismiss this claim for failure to clearly identify the parameters of the claim. *See G&S Holdings, LLC,* 697 F.3d at 537-38 (to survive dismissal a claim must go beyond mere labels and conclusions or speculation). Accordingly, Emerick's Complaint regarding a hostile work environment is dismissed without prejudice.

### b. Failure to accommodate/disparate treatment

An ADA discrimination claim can be premised on two different theories—a failure to accommodate or disparate treatment. *See **Feldman v. American Memorial Life Ins. Co.**, 196 F.3d 783, 789 (7th Cir. 1999).* To establish a failure to accommodate claim, a plaintiff must allege that: "(1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and, (3) the employer failed to reasonably

accommodate the disability." *Mobley v. Allstate Ins. Co.***, 531 F.3d 539, 545 (7th Cir.**

**2008);** *see also Bunn***, 753 F.3d at 682.** To make a reasonable accommodation, "the ADA

requires that employer and employee engage in an interactive process to determine a

reasonable accommodation." *Mobley***, 531 F.3d at 545.** "The term 'reasonable

accommodation,' in the context of this case means, '[m]odifications or adjustments to

the work environment, or to the manner or circumstances under which the position is

held or desired is customarily performed, that enable [a qualified] individual with a

disability . . . to perform the essential functions of that position[.]" *Bunn***, 753 F.3d at 682**

**(***citing* **29 C.F.R. § 1630.2(o)(1)(ii)).**

For a disparate treatment claim, a plaintiff must establish "(1) that she is disabled

within the meaning of the ADA; (2) that [she] is qualified to perform the essential

functions of the job with or without accommodation; and (3) that [she] has suffered an

adverse employment action because of [her] disability." *Bunn***, 753 F.3d at 683.** The third

prong of this test can be established by direct or circumstantial evidence, such as,

suspicious timing of the adverse action, ambiguous statements or behaviors towards

other protected group members, evidence that others outside the group got better

treatment, or evidence that the reason for an adverse action was pretextual. *Id.* **at 684.**

As to either the failure to accommodate or the disparate treatment theory, neither

party disputes that Emerick is disabled within the meaning of the ADA. Emerick has

multiple sclerosis, an impairment that she alleges prevents her body from functioning

normally in everyday tasks such as walking, standing, opening doors, etc. Defendant does not contest this, so the Court will treat it as established for purposes of this motion.

First, turning to the failure to accommodate claim, Emerick must establish that the employer knew of her condition and refused to take reasonable steps to accommodate her needs. Neither side argues that the employer did not know of the condition, so the Court will treat that as a given. Defendant grafts a fourth requirement on to the failure to accommodate elements, alleging that Emerick must prove that she suffered an adverse consequence because of Defendant's failure to accommodate. However, Seventh Circuit precedent does not reflect this fourth element, though precedent does contain this element for other claims (such as disparate treatment). This Court will not add the element to the analysis. Without that element, Defendant makes no independent argument that Emerick received reasonable accommodations.

This leaves the Court with only Emerick's bare allegations to go on—i.e., that meetings could have been held in other parts of the building or that a stair tracker device could have been used to assist her in reaching meetings and events. The evidence and argument before the Court on the viability of Emerick's failure to accommodate claim is scant, but it is not so paltry that Defendant lacks notice of the claim being made against it. Accordingly, the Court will not dismiss this claim at this juncture.

Second, as to the disparate treatment claim, neither party contends that Emerick was not qualified to perform her job with or without accommodations, and the record contains nothing suggesting that she did not perform satisfactorily. Thus, the Court will treat these elements as sufficiently established at this juncture. That leaves the adverse action element—the only element Defendant argued in its motion to dismiss. Defendant argued that Emerick did not establish an adverse action because she did not claim that she was excluded from material aspects of her position, and she remained employed when she filed a claim. By contrast, Emerick claims she was excluded from material tasks such as, not being able to participate in certain trainings and student testing. Defendant tried to establish that these excluded activities were not material to Emerick's position by appending a job description to its motion, but that description alone does not demonstrate that all the excluded activities were immaterial to Emerick's job.

Again, the paucity of evidence on this claim prevents this Court from definitively granting summary judgment or dismissal of this claim. Though the evidence is meager, the Court cannot confidently say that, with more discovery, Emerick will be unable to establish a viable claim. The bar to establish an adverse event is high, and the analysis is fact intensive, so there may or may not be enough information to support a disparate treatment claim. But, at this juncture, the Court would be speculating to say any more.

Accordingly, Emerick will be allowed to proceed beyond the motion to dismiss for her disparate treatment claim.

## V. Pending motions

The Court is in receipt of the parties' joint motion for an amended scheduling order and a continuance of the trial date, currently set for October 16, 2017 (Doc. 28). Though this Court exercises a firm trial calendar, and typically does not grant any continuances, the extraordinary circumstances in this case—including Plaintiff's medical condition and the unexpected passing of her husband—justify granting an extension. The final pretrial conference shall be **RESET** for March 16, 2018 at 10a.m., with jury trial to commence March 26, 2018 at 9:00a.m. The parties are free to work with the Magistrate Judge to adjust other discovery and dispositive motion deadlines accordingly.

In light of the continuance, the Court hereby **DENIES** the Defendant's Second Motion for Summary Judgment (Doc. 29) for the reasons set forth above. The Court notes that the Second Motion for Summary Judgment contains one additional argument—that Defendant is not required to make reasonable accommodations because Plaintiff Emerick is already performing the essential functions of her job without accommodations. The Court finds the evidence on this argument to be under-developed at this juncture to warrant a grant of summary judgment. Accordingly, the Court denies judgment on this ground at this juncture, but the denial does not bar this

argument from being presented in the future when the record is more adequately developed.

### VI.    Conclusion

Based upon the foregoing analysis, the Court hereby **GRANTS** the Defendant's Motion to the extent it seeks to bar from consideration discrete incidents of conduct that were identified in the first EEOC charge and repeated in the second EEOC charge (per the 90-day rule), as well as any discrete incidents of conduct that pre-date January 7, 2015 (per the 300-day rule). This effectively eliminates paragraphs 7-14 of the Complaint under theories of failure to accommodate or disparate treatment. However, the Court **DENIES** the Defendant's Motion to the extent it seeks to dismiss timely claims of discrete incidents of failure to accommodate or disparate treatment.

By contrast, the Court hereby **DENIES** the Defendant's Motion to the extent it seeks to preclude the suit on *res judicata* grounds and to the extent that it seeks to apply either the 90-day or 300-day time-bar to a theory of hostile work environment.

Nevertheless, the Court hereby **GRANTS** the Defendant's Motion to Dismiss the hostile work environment claim for being insufficiently pled.

**IT IS SO ORDERED.**

DATED: June 27, 2017

*s/ Michael J. Reagan*
Michael J. Reagan
United States District Judge